UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEVE ODOM,

                Plaintiff,                          Hon. Gordon J. Quist

v.                                         Case No. 1:14-cv-606

CORIZON, INC., et al.,

                Defendants.
_____/

## **REPORT AND RECOMMENDATION**

       This matter is before the Court on <u>Defendant Stieve's Motion to Dismiss</u>.  (Dkt. #12).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.


## **BACKGROUND**

       The following allegations are contained in Plaintiff's amended complaint.  (Dkt. #7).  In

June 2009, Plaintiff, who was not incarcerated at the time, injured his penis while engaging in sexual

intercourse.  On July 2, 2009, Plaintiff was taken into custody on parole violation charges.  Plaintiff was

initially incarcerated at the Washtenaw County Jail.  Plaintiff's request to receive medical treatment for

his injured penis was denied on the ground that he "would be returned to the custody and control of the

MDOC, and could seek treatment there."  On or about July 15, 2009, Plaintiff was transferred to the

Reception and Guidance Center of the Michigan Department of Corrections.  Plaintiff requested medical

treatment for his injured penis and was informed by a nurse that an appointment would be scheduled.

In August 2009, Plaintiff was examined by Dr. Pramstaller.  The doctor did not provide Plaintiff with any treatment or medication, but instead simply instructed Plaintiff to seek treatment after departing the Reception and Guidance Center.  On or about August 20, 2009, Plaintiff was transferred to the Newberry Correctional Facility.   Upon arrival, Plaintiff informed a nurse of the "pain and discomfort" he was experiencing.  The nurse informed Plaintiff that he would be scheduled for an examination.  In "late September or early October 2009," Plaintiff was examined by Dr. Sohail.  The doctor did not provide Plaintiff with treatment, but instead assured Plaintiff that the nodule on his penis "should go down" in time.

In November 2009, Plaintiff was transferred to the Ojibway Correctional Facility.  Upon his arrival, Plaintiff informed a nurse that he required treatment for his injured penis.  The nurse told Plaintiff that he would be scheduled for an examination, but before any such examination could take place, Plaintiff was transferred to the Robert Cotton Correctional Facility.  Upon arriving at this facility, Plaintiff requested medical treatment.  Plaintiff was informed that he would be scheduled for an examination, but, again, before any such examination could take place, Plaintiff was transferred to the Michigan Reformatory.  Upon his arrival, Plaintiff requested medical care for his injured penis, but Plaintiff was again transferred before receiving any medical treatment.  Plaintiff arrived at the Lakeland Correctional Facility on or about June 1, 2010.  On August 24, 2010, Plaintiff was examined by Dr. Sohail.  The doctor recommended that Plaintiff participate in an ultrasound scan, but the request for such was denied by Dr. Edelman.  Dr. Sohail did not provide Plaintiff with any medication or other treatment.

On November 7, 2010, Plaintiff reported that "the nodule in the shaft of [his] penis was getting bigger and more painful by the day."  Plaintiff "was seen in health care services shortly thereafter, but was never examined or prescribed any medication for [his] pain and discomfort."  On May 18, 2011,

Plaintiff again requested medical treatment and on June 6, 2011, Dr. Sudhir provided Plaintiff with medication to treat his condition.  On November 11, 2011, Plaintiff reported to Dr. Sudhir that his medication was no longer working and that he was experiencing "pain and discomfort."  The doctor diagnosed Plaintiff with Peyronie's disease[1] and requested that Plaintiff be treated with Vitamin E.  This request was denied by Dr. Borgerding on the ground that such treatment was "not clinically effective."

On December 13, 2011, Plaintiff was transferred to the Richard Handlon Correctional Facility.  Upon arrival, Plaintiff reported that he had "a nodule in the shaft of [his] penis" that was causing him to experience "severe pain and discomfort."  Plaintiff was not provided any medication or other treatment.  On February 21, 2012, Plaintiff was examined by Dr. Roger Gerlack.  The doctor treated an infection Plaintiff was experiencing in his thumb, but declined to examine Plaintiff's penis on the ground that "there is nothing I can do to treat you. . .Lansing will not approve any treatment for [your condition] so you are just going to have to live with the pain and discomfort."  Plaintiff subsequently began to experience "sever[e] penile deformity and shrinkage."

On March 19, 2012, Plaintiff requested that he be referred to a urologist, but Dr. Gerlack denied the request, stating, "I'm not going to make a request for you to be seen by a specialist because Lansing is not going to approve it."  Dr. Gerlack further stated that, "it is a condition that you are just going to have to learn to live with."  The doctor likewise did not prescribe any medication to treat Plaintiff's pain and discomfort.  On November 8, 2012, Plaintiff was transferred to the E.C. Brooks Correctional Facility.  Plaintiff "was eventually" examined by an unknown Physician's Assistant who informed Plaintiff that "there was nothing that he could do" for Plaintiff because "Lansing would not

---

[1] Peyronie's disease "is the development of fibrous scar tissue inside the penis that causes curved, painful erections."  *See* Peyronie's Disease, available at http://www.mayoclinic.org/diseases-conditions/peyronies-disease/basics/definition/con-20028765 (last visited on Dec. 4, 2014).

approve any treatment" for his condition.  Plaintiff was further informed that he "was just going to have to live with the pain and discomfort."

On December 4, 2013, Plaintiff was examined by Dr. Richard Worel.  The doctor informed Plaintiff that "there was nothing he could do to treat" his condition and, moreover, that "Lansing would not approve any treatment" for such.  The doctor also informed Plaintiff that he "was going to have to live with the pain and discomfort."  Plaintiff subsequently read a Merck Manual and watched a television program entitled, "Sex Sent me to the E.R.," after which Plaintiff became convinced that he had suffered a fractured penis.  On December 26, 2013, Plaintiff requested to be examined by a urologist, but such was again denied.

On March 4, 2013, Plaintiff reported that he was experiencing "a dull aching pain throughout the urinary trac[t] and prostate whenever I urinate."  The following day, Plaintiff was examined by an unidentified nurse.  After obtaining a urine sample from Plaintiff, the nurse instructed Plaintiff to "drink plenty of water," but provided no other treatment or medication.  On March 20, 2014, Plaintiff was examined by Dr. Sudhir who concluded that "there was nothing that health care could do" for Plaintiff.  On April 10, 2014, Plaintiff was examined by Dr. Worel who informed Plaintiff that his "penile condition was not going to be treated and that [he] was just going to have to live with the pain, discomfort, and penile deterioration."  On May 27, 2014, Plaintiff was transferred to the Macomb Correctional Facility.  Plaintiff requested treatment for his condition, but as of June 30, 2014, had received no medication or other treatment.

Plaintiff initiated this action on June 5, 2014, against Corizon, Inc. and the following individuals: (1) Jeffrey Stieve, M.D.; (2) William Borgerding, M.D.; (3) Unknown Pramstaller, M.D.; (4) Adam Edelman, M.D.; (5) Syed Sohail, M.D.; (6) Bhamini Sudhir, M.D.; (7) Roger Gerlack, M.D.;

(8) Richard Worel, M.D.; (9) S. Laughhunn; and (10) Unknown Parties. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Defendant Stieve now moves to dismiss Plaintiff's claims.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

## ANALYSIS

Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998). Plaintiff "must show that a supervising officer did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on."

*Walters v. Stafford*, 317 Fed. Appx. 479, 486 (6th Cir., Mar. 18, 2009) (citing *Bass*, 167 F.3d at 1048). Likewise, liability does not attach to a supervisory employee "based solely on the right to control employees, or simple awareness of employees' misconduct." *Stafford*, 317 Fed. Appx. at 486-87. Instead, Plaintiff must demonstrate *personal involvement* by a particular defendant. *See Bass*, 167 F.3d at 1048 (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior").

The only allegations in Plaintiff's amended complaint against Defendant Stieve are that he "failed to supervise and train" the medical professionals responsible for Plaintiff's health care. (Dkt. #7 at ¶¶ 141-45). Plaintiff does not allege that Defendant Stieve was actively or personally involved in the events giving rise to this action, but instead asserts that his claim against Stieve is based on his belief that Stieve "had supervisory authority and control over" certain Defendants. (Dkt. #7 at ¶ 141).

In response to the present motion, Plaintiff concedes that Defendant Stieve was not personally involved in the events in question, but asserts that Stieve may nevertheless be held liable if he encouraged the misconduct or otherwise participated therein. Plaintiff has accurately stated the legal standard. *See, e.g., Smith v. McBurney*, 560 Fed. Appx. 523, 525 (6th Cir., Mar. 25, 2014) (a supervisory official is not liable under § 1983 "unless he either encouraged the specific incident of misconduct or in some other way directly participated in it"). The shortcoming with Plaintiff's argument, however, is that his amended complaint contains no allegations that Defendant Stieve encouraged or directly participated in the events giving rise to this action. Again, Plaintiff's claims against Defendant Steive are based on nothing more than Stieve's status as supervisor over certain Defendants. As previously noted, however, such is an insufficient basis on which to assert liability. Accordingly, the undersigned recommends that Defendant Stieve's motion to dismiss be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Stieve's Motion to Dismiss</u>, (Dkt. #12), be **granted**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  January 5, 2015                                          /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge