UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE ODOM,

        Plaintiff,                      Hon. Gordon J. Quist

v.                                          Case No. 1:14-cv-606

CORIZON, INC., et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (Dkt. #83), and Defendants' Motion for Summary Judgment, (Dkt. #90). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted** and this matter **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's amended complaint. (Dkt. #7). In June 2009, Plaintiff, who was not incarcerated at the time, injured his penis while engaging in sexual intercourse. On July 2, 2009, Plaintiff was taken into custody on parole violation charges. Plaintiff was initially incarcerated at the Washtenaw County Jail. Plaintiff's request to receive medical treatment for his injured penis was denied on the ground that he "would be returned to the custody and control of the MDOC, and could seek treatment there." On or about July 15, 2009, Plaintiff was transferred to the

Reception and Guidance Center of the Michigan Department of Corrections. Plaintiff requested medical treatment for his injured penis and was informed by a nurse that an appointment would be scheduled.

In August 2009, Plaintiff was examined by Dr. Pramstaller. The doctor did not provide Plaintiff with any treatment or medication, but instead simply instructed Plaintiff to seek treatment after departing the Reception and Guidance Center. On or about August 20, 2009, Plaintiff was transferred to the Newberry Correctional Facility. Upon arrival, Plaintiff informed a nurse of the "pain and discomfort" he was experiencing. The nurse informed Plaintiff that he would be scheduled for an examination. In "late September or early October 2009," Plaintiff was examined by Dr. Sohail. The doctor did not provide Plaintiff with treatment, but instead assured Plaintiff that the nodule on his penis "should go down" in time.

In November 2009, Plaintiff was transferred to the Ojibway Correctional Facility. Upon his arrival, Plaintiff informed a nurse that he required treatment for his injured penis. The nurse told Plaintiff that he would be scheduled for an examination, but before any such examination could take place, Plaintiff was transferred to the Robert Cotton Correctional Facility. Upon arriving at this facility, Plaintiff requested medical treatment. Plaintiff was informed that he would be scheduled for an examination, but, again, before any such examination could take place, Plaintiff was transferred to the Michigan Reformatory. Upon his arrival, Plaintiff requested medical care for his injured penis, but Plaintiff was again transferred before receiving any medical treatment. Plaintiff arrived at the Lakeland Correctional Facility on or about June 1, 2010. On August 24, 2010, Plaintiff was examined by Dr. Sohail. The doctor recommended that Plaintiff participate in an ultrasound scan, but the request for such was denied by Dr. Edelman. Dr. Sohail did not provide Plaintiff with any medication or other treatment.

On November 7, 2010, Plaintiff reported that "the nodule in the shaft of [his] penis was getting bigger and more painful by the day." Plaintiff "was seen in health care services shortly thereafter, but was never examined or prescribed any medication for [his] pain and discomfort." On May 18, 2011, Plaintiff again requested medical treatment and on June 6, 2011, Dr. Sudhir provided Plaintiff with medication to treat his condition. On November 11, 2011, Plaintiff reported to Dr. Sudhir that his medication was no longer working and that he was experiencing "pain and discomfort." The doctor diagnosed Plaintiff with Peyronie's disease[1] and requested that Plaintiff be treated with Vitamin E. This request was denied by Dr. Borgerding on the ground that such treatment was "not clinically effective."

On December 13, 2011, Plaintiff was transferred to the Richard Handlon Correctional Facility. Upon arrival, Plaintiff reported that he had "a nodule in the shaft of [his] penis" that was causing him to experience "severe pain and discomfort." Plaintiff was not provided any medication or other treatment. On February 21, 2012, Plaintiff was examined by Dr. Roger Gerlack. The doctor treated an infection Plaintiff was experiencing in his thumb, but declined to examine Plaintiff's penis on the ground that "there is nothing I can do to treat you. . .Lansing will not approve any treatment for [your condition] so you are just going to have to live with the pain and discomfort." Plaintiff subsequently began to experience "sever[e] penile deformity and shrinkage."

On March 19, 2012, Plaintiff requested that he be referred to a urologist, but Dr. Gerlack denied the request, stating, "I'm not going to make a request for you to be seen by a specialist because Lansing is not going to approve it." Dr. Gerlack further stated that, "it is a condition that you are just going to have to learn to live with." The doctor likewise did not prescribe any medication to treat

---

[1] Peyronie's disease "is the development of fibrous scar tissue inside the penis that causes curved, painful erections. "*See* Peyronie's Disease, available at
http://www.mayoclinic.org/diseases-conditions/peyronies-disease/basics/definition/con-20028765 (last visited on Aug. 12, 2015).

Plaintiff's pain and discomfort. On November 8, 2012, Plaintiff was transferred to the E.C. Brooks Correctional Facility. Plaintiff "was eventually" examined by an unknown Physician's Assistant who informed Plaintiff that "there was nothing that he could do" for Plaintiff because "Lansing would not approve any treatment" for his condition. Plaintiff was further informed that he "was just going to have to live with the pain and discomfort."

On December 4, 2013, Plaintiff was examined by Dr. Richard Worel. The doctor informed Plaintiff that "there was nothing he could do to treat" his condition and, moreover, that "Lansing would not approve any treatment" for such. The doctor also informed Plaintiff that he "was going to have to live with the pain and discomfort." Plaintiff subsequently read a Merck Manual and watched a television program entitled, "Sex Sent me to the E.R.," after which Plaintiff became convinced that he had suffered a fractured penis. On December 26, 2013, Plaintiff requested to be examined by a urologist, but such was again denied.

On March 4, 2013, Plaintiff reported that he was experiencing "a dull aching pain throughout the urinary trac[t] and prostate whenever I urinate." The following day, Plaintiff was examined by an unidentified nurse. After obtaining a urine sample from Plaintiff, the nurse instructed Plaintiff to "drink plenty of water," but provided no other treatment or medication. On March 20, 2014, Plaintiff was examined by Dr. Sudhir who concluded that "there was nothing that health care could do" for Plaintiff. On April 10, 2014, Plaintiff was examined by Dr. Worel who informed Plaintiff that his "penile condition was not going to be treated and that [he] was just going to have to live with the pain, discomfort, and penile deterioration." On May 27, 2014, Plaintiff was transferred to the Macomb Correctional Facility. Plaintiff requested treatment for his condition, but as of June 30, 2014, had received no medication or other treatment.

Plaintiff initiated this action on June 5, 2014, against Corizon, Inc. and the following individuals: (1) Jeffrey Stieve, M.D.; (2) William Borgerding, M.D.; (3) Unknown Pramstaller, M.D.; (4) Adam Edelman, M.D.; (5) Syed Sohail, M.D.; (6) Bhamini Sudhir, M.D.; (7) Roger Gerlack, M.D.; (8) Richard Worel, M.D.; (9) S. Laughhunn; and (10) Unknown Parties. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Defendant Stieve has since been dismissed from this action. The remaining defendants now move for summary judgment.

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim

for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.       Defendant Laughhunn**

Defendant Laughhunn asserts that she is entitled to relief because Plaintiff has failed to allege that she engaged in any unlawful conduct.  The Court agrees.  The only factual allegation Plaintiff makes against Laughhunn is that she responded to a grievance that he filed. (Dkt. #7 at ¶ 114).  Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior." *See King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012).  Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Lee v. Michigan Parole Board*, 2004 WL 1532563

at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").  Accordingly, the undersigned recommends that Defendant Laughhunn's motion be granted.

**II.        Defendant Borgerding**

Plaintiff makes a single allegation against Dr. Borgerding.  Specifically, Plaintiff alleges that Borgerding denied a request by Dr. Sudhir to treat Plaintiff with Vitamin E.  (Dkt. #7 at ¶¶ 68-69). Dr. Borgerding allegedly denied this request on the ground that such treatment was "not clinically effective."  (Dkt. #7 at ¶ 69).  Plaintiff alleges that Dr. Borgerding's actions constitute a violation of his right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).  The analysis by which a defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In response to an interrogatory submitted by Plaintiff, Dr. Borgerding asserted that "I did review and defer a request by Dr. Bhamini Sudhir for Vitamin E on November 14, 2011 because Vitamin E is not clinically effective at treating Peyronie's disease, which is what the referral to me said the Vitamin E would be used for on a three month trial basis."[2] (Dkt. #87, Exhibit 7). Plaintiff offers no evidence to the contrary. It is clear, therefore, that Plaintiff's claim against Dr. Borgerding represents nothing more than a disagreement over the doctor's treatment decisions. While such may constitute negligence or malpractice, such does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Dr. Borgerding's motion for summary judgment be granted.

**III.        Defendant Pramstaller**

In his amended complaint, Plaintiff alleges that Dr. Pramstaller examined him in August 2009, and failed to provide him with adequate medical treatment. (Dkt. #7 at ¶¶ 32-33). Dr. Pramstaller has submitted an affidavit in which he asserts that he never examined Plaintiff because he retired in March 2008. (Dkt. #87, Exhibit 5). Plaintiff acknowledges as much, stating in his response to the present motion, "Plaintiff admits that Defendant George Pramstaller, M.D., should be dismissed from the case." (Dkt. #110 at Page ID#1040). Accordingly, the undersigned recommends that Dr. Pramstaller's motion for summary judgment be granted.

---

[2] Sworn interrogatory responses may be considered as evidence in the context of a motion for summary judgment. *See Lauderdale v. Wells Fargo Home Mortgage*, 552 Fed. Appx. 566, 571 (6th Cir., Jan. 23, 2014).

**IV.        Defendant Corizon Health Inc.**

While Corizon is identified as a defendant in Plaintiff's amended complaint, Plaintiff fails to make any factual allegations against Corizon. It appears that Plaintiff is seeking to impose liability on Corizon on the basis of respondeat superior. Corizon, however, is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001).

To impose liability against Corizon, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Corizon policy, practice, or custom. *See Thomas*, 398 F.3d at 429. To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that Corizon had notice or constructive notice of such; (3) that Corizon tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff's amended complaint contains no factual allegations that, even if accepted as true, would entitle him to prevail on a claim against Corizon. Accordingly, the undersigned recommends that Plaintiff's claims against Corizon be dismissed for failure to state a claim on which relief may be

granted. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### V.        Defendant Edelman

Plaintiff makes a single allegation against Dr. Edelman. Specifically, Plaintiff alleges that on August 27, 2010, Edelman denied a request by Dr. Sohail to perform an ultrasound examination of Plaintiff's penis. (Dkt. #7 at ¶¶ 55-57). Dr. Edelman allegedly denied this request on the ground that such was not medically necessary. (Dkt. #7 at ¶ 57). Plaintiff alleges that Dr. Edelman's actions constitute a violation of his right to be free from cruel and unusual punishment.

In support of his motion for summary judgment, Dr. Edelman has submitted a sworn statement in which he asserts that "based upon my medical experience and relevant medical literature, an ultrasound of [Plaintiff's] penis was not necessary for his treatment in August 2010." (Dkt. #83, Exhibit G). Edelman further stated that:

> I did not believe that [Plaintiff's] medical history and complaints demonstrated a medical necessity for an ultrasound. While [Plaintiff] complained of some pain during erection, there was no urgent or emergent need for a urological examination or ultrasound; appropriate treatment and evaluation could be accomplished at the facility level. Specifically, without evidence of a more serious condition or more urgent need for care, I believed additional monitoring of his condition was needed before an ultrasound would be necessary. Accordingly, my alternative treatment plan recommended that [Plaintiff's] condition continued to be monitored to see if it worsened or further progressed.

(Dkt. #83, Exhibit G).

Plaintiff has presented no evidence to the contrary. Plaintiff's claim against Dr. Edelman, therefore, represents nothing more than a disagreement over the doctor's treatment decisions. While such may constitute negligence or malpractice, such does not implicate the Eighth Amendment.

Accordingly, the undersigned recommends that Dr. Edleman's motion for summary judgment be granted.

VI.         **Defendants Sohail, Gerlach, Sudhir, and Worel**

Plaintiff alleges that he was examined by these doctors on several occasions between 2009 and 2014. (Dkt. #7 at ¶¶ 36-38, 54-58, 64, 67-70, 76-85, 94, 108-12). Plaintiff alleges that these doctors failed to provide him with appropriate medical treatment. Each of these doctors have provided sworn statements detailing the treatment Plaintiff received from themselves and many others. (Dkt. #83, Exhibits C-G; Dkt. #91). Defendants have also submitted copies of Plaintiff's medical records. (Dkt. #85). A review of this evidence makes clear that Plaintiff's claims against these defendants are based on nothing more than a disagreement with the doctors' judgment and treatment decisions. Plaintiff has failed to present any evidence suggesting otherwise. While such may constitute negligence or malpractice, such does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that these doctors are entitled to summary judgment.

VII.        **Defendants John Doe(s) and Jane Doe(s)**

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own initiative after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See also*, *Abel v. Harp*, 122 Fed. Appx. 248, 250 (6th Cir., Feb. 16,

2005) ("[a]bsent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure *compel* dismissal") (emphasis added); *Clemons v. Soeltner*, 652 Fed. Appx. 81, 82 (6th Cir., Mar. 26, 2003) (if the plaintiff demonstrates good cause for such failure, the court *may* extend the time for service).

Plaintiff initiated the present action on June 5, 2014, and amended his complaint on August 5, 2014. In the year since Plaintiff last amended his complaint, he has failed to identify Defendants John Doe(s) and Jane Doe(s), seek the assistance of the Court in identifying these individuals, or request an extension of time to effect service on these individuals. Considering Plaintiff's lack of diligence in this matter, as well as his failure to articulate good cause for such lack of diligence, the undersigned recommends that Plaintiff's claims against Defendants John Doe(s) and Jane Doe(s) be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #83), be **granted**; Defendants' Motion for Summary Judgment, (Dkt. #90), be **granted**; Plaintiff's claims against Defendants John Doe(s) and Jane Doe(s) be **dismissed without prejudice** for failure to timely effect service; and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                             Respectfully submitted,

Date:  August 14, 2015                     /s/ Ellen S. Carmody
                                             ELLEN S. CARMODY
                                             United States Magistrate Judge